(35 Misc. Rep. 564.)

### McLAGGAN v. SMITH et al.

(Supreme Court, Special Term, Onondaga County. July, 1901.)

FRAUDULENT CONVEYANCE—CREDITORS' SUIT—WHEN MAINTAINABLE.

A creditor brought an action against the father of his debtor to set aside a conveyance made by the debtor to the father, as in fraud of creditors. Pending the trial, the father conveyed a small piece of property to his wife to avoid payment of any judgment which might be rendered against him. Decree was rendered for the creditor, and after sale of the property conveyed by the debtor a deficiency judgment for costs was recovered against the father. *Held*, that an action was maintainable by the creditor against the father to set aside the transfer made by the

father to his wife to recover the costs in the original action, though the debt had not ripened into a liability at the time of the transfer by the father.

Action by John R. McLaggan against Eli Smith and Lavina Smith to set aside a deed as in fraud of creditors of Eli Smith. The land conveyed was of the value of $400, subject to a mortgage of $150. The conveyance reserved a life interest in the grantor, who was about 70 years of age. Judgment for plaintiff.

Kelly & Rill, for plaintiff.
C. H. Lewis, for defendants.

HISCOCK, J. In addition to the facts above stated, it appeared upon the trial that on or about June 21, 1898, a son of the defendant Eli Smith made a conveyance to his father of 13 acres of land situated in the town of Cicero, and then left the state for Michigan; that said son left unpaid several hundred dollars of indebtedness existing at the time when he made said conveyance; and that thereafter an action was brought by the plaintiff to have said transfer from the son to the father set aside as fraudulent and void as to him and other creditors. Plaintiff succeeded in said action, and a judgment was duly entered on or about October 31, 1900, which vacated and set aside said deed, and also provided as follows:

"That the plaintiff * * * recover of the defendants the sum of $747, and the sum of $224.97 costs and disbursements of the action, * * * which sum is hereby declared to be a lien upon the lands embraced in said deed of conveyance; * * * that said land, or so much thereof as may be necessary for that purpose, be sold by the sheriff of the county of Onondaga to satisfy said lien in like manner as upon a sale on execution; that out of the net proceeds of such sale the said sheriff pay to the plaintiff, or to his attorneys, the sum so adjudged to the plaintiff as aforesaid, with interest thereon to the time of such payment; that, if there be any surplus remaining after such payment, the said sheriff pay the same to the defendant Eli Smith, or his attorneys; and that the sum of $747 damages, adjudged to the plaintiff as aforesaid in this action, shall not be recoverable from said Eli Smith or other defendants otherwise than from said real estate, but that the plaintiff recover of said defendant Eli Smith personally the residue of said sum adjudged to the plaintiff for costs and disbursements of the action, to wit, the sum of $224.97, in case the proceeds of the said sale shall be insufficient to satisfy the whole sum found due to the plaintiff as aforesaid."

Thereafter the property covered by said deed so set aside as fraudulent as aforesaid was sold, in accordance with said judgment, for the sum of $400, which was insufficient to pay the creditors' claims involved in the action aforesaid, and, of course, insufficient to pay the judgment for costs of $224.97, and thereupon, in said action, as the result of said sale, a judgment as for a deficiency was entered against the defendant Eli Smith in said action on or about January 7, 1901, for said costs, $224.97, and interest and disbursements in addition, making in all the sum of $277.21; and thereafter, and on said 7th day of January, 1901, an execution was issued against said Smith, which thereafter, and before the commencement of this action, was returned unsatisfied, whereupon this action was brought upon said last-mentioned judgment to set aside the transfer from the husband to the wife, defendants herein. I have referred to the proceed-

ings at length which led up to the judgment in question, because they are somewhat out of the ordinary course, and because they are made the subject of criticism by defendants' counsel. While the action brought by plaintiff against the defendant Eli Smith to set aside the transfer by the son was still pending, and after it had been in part tried, the deed in question herein was executed to the defendant wife. I have no doubt, upon the evidence, and from all the surrounding circumstances, that it was executed for the purpose of avoiding payment and collection of any judgment for costs or otherwise which plaintiff might secure against the defendant Eli Smith in the action then pending to set aside the transfer by the son. The transfer stripped the defendant Eli of all his property. The only consideration for it was an alleged agreement made between him and the defendant Lavina before their marriage, which had occurred a short time prior, that, if she would marry him, he would execute to her a transfer of the land in question here, or of the land covered by the son's transfer, and, as I suggested upon the trial, I am inclined to think that there was some talk between the defendant Eli and the defendant Lavina about his making some provision for her if she would marry him. This talk rests entirely upon the evidence of interested parties and their relatives, but, as stated, I am inclined to think there was some talk upon that subject. Concededly, however, there was no written contract or agreement, and there was no performance of the alleged verbal agreement promptly upon the performance of the marriage. In fact, nothing was done to carry out its provisions for several months after the marriage, and until the defendant Eli had become involved in the litigation over his son's deed. It is not argued that this parol antenuptial talk was a sufficient consideration for the transfer from the husband to the wife as against creditors. It is claimed upon the part of the defendants that, if it took place, it would be sufficient to rebut the presumption of fraud in the conveyance, although the same was voluntary. I am led to believe, however, by all of the circumstances, and especially by the failure to do anything in the way of carrying out said alleged understanding between the parties for so long a time after the marriage, that the motives which prompted the defendants finally to an execution of the conveyance was the fear of losing the property to plaintiff, and a desire to prevent such an occurrence; that they were largely actuated by a desire and intent to prevent the plaintiff from imposing upon the property any liability which might accrue in the then pending litigation, and that this fraudulent and improper intent entered into the execution of the conveyance. It is urged by the defendants that at the time the conveyance was executed there was no indebtedness existing in favor of the plaintiff against the defendants, or either of them. A litigation, however, then was, and for some time had been, pending between plaintiff and the defendant grantor. While costs in an equity suit, as urged by defendants' counsel, are an incident, and do not necessarily follow success, still it was certainly entirely possible that plaintiff might, as he did, recover a judgment for costs. With the commencement of the litigation the contingent liability existed against the defendant grantor

of a judgment for costs, and it is well settled that a grantor may be guilty of fraud in making a conveyance to avoid liabilities ripening thereafter, as well as in making one to escape debts absolutely fixed at the time of the conveyance.

In addition to the defense interposed upon the merits, two technical defenses are called to my attention by defendants' counsel upon the submission of the case. It is urged that the judgment in the suit brought by plaintiff to set aside the first conveyance by the son is not in accordance with the referee's report and directions for a judgment therein contained. There is no very substantial difference, so far as this action is concerned, between the judgment as entered and the one directed; but it is sufficient to say here that no such defense is presented for consideration. The judgment in said action was entered in October. If it was not in accordance with the referee's report, or was irregular in any respect, the relief for such fault would be found in a motion directed to a reformation of the judgment.

It is next urged that the grantor, in the conveyance attacked in this action, reserved a life interest in the property in question, and that such life interest could be reached by an ordinary execution sale which was not done. This objection also is not of much practical importance. The entire property involved here, as hereinbefore stated, is of small value. The husband is a man of over 70 years of age, and his life estate, therefore, would not bring upon a sale but a few dollars, in all probability. This point, however, is not properly presented by any defense in this action. An execution was issued upon the judgment, upon which this action was based, before the action was started. It was duly returned wholly unsatisfied by the sheriff. If such return was untrue or improper, proceedings should have been instituted directly against the return upon said execution. At least, the defense should have been set up in this action that it was an untrue return.

Findings and judgment may be prepared in behalf of the plaintiff, setting aside said transfer.

Judgment for plaintiff.